Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
23586 Calabasas Road, Suite 105
Calabasas CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff, and all others similarly situated*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DOTSON, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BOB EVANS FARMS, INC.,<br><br>Defendant. | Case No. 2:25-cv-11993-MWC-DSR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>(1)  Violation of False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq.*) and<br>(2)  Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*)<br>(3)  Violation of Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*)<br><br>**Jury Trial Demanded**<br><br>**(Amount to exceed $35,000)** |

Now comes the Plaintiff, MICHAEL DOTSON ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, and for his first amended class action Complaint against the Defendant, BOB EVANS FARMS, INC., ("Defendant"), Plaintiff alleges and states as follows:

## PRELIMINARY STATEMENTS

1.     This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq.*, Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*, and Violation of Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*) resulting from the illegal actions of Defendant, in advertising and labeling its products as containing "no artificial preservatives" when the products contain sodium phosphate and lactic acid. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## JURISDICTION AND VENUE

2.     Defendant removed this case to the District Court of the Central District of California alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds the sum or value of $75,000.00 in which members of the class are citizens of a State different from the Defendant.

3.     This court has personal jurisdiction over Defendant, because Defendant does business within the State of California and County of Los Angeles.

4.     Venue is proper in this Court because Defendant does business *inter alia* in this District and a significant portion of the conduct giving rise to Plaintiffs Claims happened here.

## PARTIES

5.     Plaintiff Michael Dotson is an individual who was at all relevant times residing in Los Angeles County, California.

6.     Defendant is a Delaware corporation headquartered in New Albany, Ohio.

7.     At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of macaroni and cheese.

## FACTS COMMON TO ALL COUNTS

8.     Defendant manufactures, advertises, markets, sells, and distributes products throughout California and the United States under brand name Bob Evans.

FIRST AMENDED CLASS ACTION COMPLAINT

9.      During the Class Period Defendant labeled its Bob Evans Tasteful Sides: Macaroni and Cheese products (the "Products") as containing "no artificial preservatives" when they contain sodium phosphate and lactic acid.

10.     The United Stated Food and Drug Administration ("FDA") defines the term chemical preservative as: "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22.

11.     Sodium phosphate salts are produced by a variety of synthetic processes including, but not limited to, acid base reactions between phosphoric acid and sodium carbonate. Sodium phosphate salts used in food products is manufactured using this method.

12.     The process to synthesize sodium phosphate includes the following: tricalcium phosphate is purified phosphate rock, which is then reacted with sulfuric acid to form phosphoric acid and calcium sulfate, phosphoric acid is then reacted with sodium hydroxide to create sodium phosphate salts and water.

13.     The following figures depicts the synthesis of sodium hydrogen phosphate, one of the regularly used sodium phosphate salts:

FIRST AMENDED CLASS ACTION COMPLAINT

Ore (phosphate rock)

Acidification

Phosphoric acid

Neutralization

Sodium hydrogen phosphate

14.    Sodium phosphate salts are highly water-soluble inorganic salts and are added to foods to retard the deterioration thereof by preventing microbial growth and survival, lipid oxidation, and enzymatic browning to extend the shelf life of consumer food products.[1]

15.    In basic terms, sodium phosphate salts extends the shelf-life of the Products by creating an environment inhospitable to bacteria growth.

16.    Specifically, as depicted in the chart below, sodium phosphates are used as preservatives in cheese:

TABLE 4-1   Common Sodium-Containing Compounds Used for Food Preservation

| Compound Name | Food to Which the Compound Is Added |
| --- | --- |
| Disodium ethylenediaminetetraacetic acid (EDTA) | Salad dressing, mayonnaise, canned seafood, fruit fillings |
| Sodium acetate | Baked goods, seafood |
| Sodium ascorbate | Meat products |
| Sodium benzoate | Beverages, fermented vegetables, jams, fruit fillings, salad dressings |
| Sodium dehydroacetate | Squash |
| Sodium diacetate | Condiments |
| Sodium erythorbate | Meat, soft drinks |
| Sodium lactate | Meat products |
| Sodium nitrate | Cured meats |
| Sodium nitrite | Cured meats |
| Sodium phosphates | Meat products, cheese, puddings or custards |
| Sodium propionate | Cheese, baked goods |
| Sodium sulfite | Fruit and vegetable products, seafood |

SOURCE: Doyle et al., 2001.                                                                              [2]

---

[1] National Academies of Sciences, Engineering, and Medicine. Strategies to Reduce Sodium Intake in the United States, https://nap.nationalacademies.org/catalog/12818/strategies-to-reduce-sodium-intake-in-the-united-states.

[2] Doyle, M. P., L. R. Beuchat, and T. J. Montville, eds. 2001. Food microbiology: Fundamentals and frontiers. 2nd ed. Washington, DC: ASM Press

FIRST AMENDED CLASS ACTION COMPLAINT

17.     Defendant uses manufactured, artificial lactic acid in the Products.

18.     Manufactured lactic acid is produced through genetically engineered bacterial fermentation and acid base synthesis. Genetically engineered bacteria are fed a carbohydrate feedstock like glucose or sucrose and excrete lactic acid as a part of their biological metabolic process. Lactic acid is then collected and refined by removing dead bacteria cells through Rotary Drum Vacuum Filter.[3] Lactic acid is then purified and extracted by adding a calcium salt like calcium carbonate $CaCo_3$ (lime, chalk) to cause a spontaneous synthetic acid-base reaction between the calcium carbonate and the lactic acid.[4] The result of that synthetic reaction is the salt calcium lactate. To purify and successfully convert the calcium lactate to lactic acid an additional industrial chemical, sulfuric acid is added to produce lactic acid and calcium sulfate (gypsum) the gypsum is then collected, and the lactic acid can then be further purified with organic solvents.[5]

19.     Lactic acid is active against microorganisms in its undissociated form. The concentration of undissociated lactic acid in cheeses increases with the increase in total lactic acid content and is negatively correlated with pH. The main factors affecting microbial behavior in cheeses include pH, $a_w$, undissociated lactic acid concentration, and temperature.[6]

20.     Lactic acid when added to food tends to prevent or retard deterioration thereof, but is not common salt, sugar, vinegar, a spice, an oil extracted from spices, a substance added to food by direct exposure thereof to wood smoke, or a chemical applied for its insecticidal or herbicidal properties

21.     Based on the forgoing allegations, sodium phosphate salts and lactic acid are artificially produced chemicals that retard the deterioration consumer products. Therefore, Defendants use sodium phosphate salts and lactic acid that are artificial chemical preservatives in the Products.

22.     When purchasing the Products Plaintiff made his purchasing decision because of the labeling on the Product that read "no artificial preservatives".

---

[3] G.K. Chotani et al., in *Handbook of Indus. Chem. & Biotech.*, 1495 (J.A. Kent et al. eds., Springer 2017).

[4] G.K. Chotani et al., in *Handbook of Indus. Chem. & Biotech.*, 1495 (J.A. Kent et al. eds., Springer 2017); A.O. Ojo & O. de Smidt, *Processes*, **11**, 688 (2023).

[5] *Id.*

[6] Rosshaug P.S., Detmer A., Ingmer H., Larsen M.H. Modeling the growth of Listeria monocytogenes in soft blue-white cheese. Appl. Environ. Microbiol. 2012;78:8508–8514. doi: 10.1128/AEM.01865-12; Sanaa M., Coroller L., Cerf O. Risk Assessment of Listeriosis Linked to the Consumption of Two Soft Cheeses Made from Raw Milk: Camembert of Normandy and Brie of Meaux. Risk Anal. 2004;24:389–399. doi: 10.1111/j.0272-4332.2004.00440.x.

FIRST AMENDED CLASS ACTION COMPLAINT

23.    Plaintiff, and reasonable consumers, understand the term "artificial" based on common parlance such that "artificial" means "made, produced, or done by people".[7]

24.    Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims.

25.    On September 8, 2025, Plaintiff purchased one of the Bob Evans Tasteful Sides: Macaroni and Cheese Products from an Amazon Fresh store located in Woodland Hills, California.

26.    The following photo is an example of the Product's Packaging that Plaintiff purchased including the No Artificial Preservatives label that he relied upon when making his purchase:



27.    Plaintiff has been deprived of her legally-protected interest to obtain true and accurate information about the consumer products she buys as required by California Law.

---

[7] Artificial, Merriam-Webster, https://www.merriam-webster.com/dictionary/artificial (last visited Mar. 13, 2025).

FIRST AMENDED CLASS ACTION COMPLAINT

28.     As a result, Plaintiff and the class members have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would not contain artificial preservatives.

29.     Plaintiff and the Class Members expected to receive the benefit of avoiding the negative potential effects of consuming artificial preservatives, however they have been deprived of that benefit because the Products contain artificial sodium phosphate.

30.     Alternatively, Plaintiffs would not have purchased the Products in lieu of other similar Products without Defendant's misleading "no artificial preservatives" label.

31.     Plaintiff and the Class Members paid a price premium to receive premium products that did not contain artificial preservatives, instead Plaintiff received non-premium products containing artificial preservatives.

32.     Plaintiff did not understand that the Products contained artificial preservatives when he purchased them.

33.     Furthermore, due to Defendant's intentional, deceitful practice of labeling the Products as containing "no artificial preservatives", Plaintiff could not have known that the Products contained artificial preservatives.

34.     By making false and misleading claims about the qualities of the Products, Defendant impaired Plaintiff's ability to choose the type and quality of the Products they chose to buy.

35.     Producers of consumer products, like Defendant, use consumer product labeling to increase consumer demand for products based on the perceived features or benefits of the products thereby increasing the price producers can charge for their products and/or the quantity they can sell.

36.     Defendant by including "no artificial preservatives" labeling increased consumer demand for the Products by incentivizing consumers to purchase them to receive desirable product features.

37.     However, as described above, the "no artificial preservatives" label on Defendant's Products is misleading, and consumers have been therefore deprived of that product feature. As a result, Defendant has been able to sell the Products at a greater price and/or in greater quantity than if Defendant did not include the challenged labeling, but without providing consumers with the promised product feature. Stated otherwise, Defendant coerced consumers to base their purchasing decision in material part on false claims, thereby fraudulently, deceptively, and

FIRST AMENDED CLASS ACTION COMPLAINT

unfairly increasing consumer demand for the product.  Defendant profited from these acts by extracting additional funds from consumers than otherwise would not have been paid for Class Products, and also harmed competitors by luring would-be consumers of competitive products away from law-abiding products that were not so falsely advertised

38.    Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products included artificial preservatives, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products contained artificial preservatives unless Defendant expressly told them, as required by law.

39.    Plaintiff regularly visits stores where the Products are sold and will likely be exposed to Defendant's "no artificial preservatives" labeling in the future. However, unless Defendant is forced to correct the fraudulent labeling or remove the synthetic preservatives, Plaintiff will be unable to determine if Defendant's "no artificial preservatives" label accurately reflects the true contents of the Products.

40.    Plaintiff believes that products without artificial flavors or preservatives are superior in quality to products that contain artificial preservatives, and desires to purchase Products that do not contain artificial preservatives as Defendant advertised the Products to be.

41.    Plaintiff may purchase the Products again in the future, and as a result they will be harmed if Defendant is not forced to correct the fraudulent labeling or remove the artificial preservatives.

42.    As a result of Defendant's acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

     a.     Lost money as a result in a shift of the consumer demand curve which increases consumer demand, the number of units sold, and the price of the Products;

     b.     Wasting Plaintiff's time; and

     c.     Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

43.    Plaintiff brings this action on behalf of himself and all others similarly situated, as members of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of the original Complaint through to the date of class certification.

FIRST AMENDED CLASS ACTION COMPLAINT

44.     Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the proposed California sub-class (the "Sub-Class"), defined as follows:

> All persons within California who purchased the Products within four years prior to the filing of the original Complaint through to the date of class certification.

45.     Defendant, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believe the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

46.     The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

47.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

48.     There are questions of law and fact common to the Class and Sub-Class affecting the parties to be represented. The questions of law and fact common to the Class and Sub-Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

    a.     Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by labeling the Products as containing "no artificial preservatives" when the Products contain sodium phosphate and lactic acid;

    b.     Whether the Class and Sub-Class members were informed that the Products contained artificial sodium phosphate and lactic acid;

    c.     Whether the Products contained artificial sodium phosphate and lactic acid;

    d.     Whether Defendant's conduct was unfair and deceptive;

FIRST AMENDED CLASS ACTION COMPLAINT

e.      Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

f.      Whether the inclusion of artificial sodium phosphate in the Products is a material fact;

g.      Whether there should be a tolling of the statute of limitations; and

h.      Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

49.     As a resident of the United States and the State of California who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

50.     Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

51.     Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

52.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

53.     The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

FIRST AMENDED CLASS ACTION COMPLAINT

54.     Defendant has acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

55.     The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

**COUNT I**
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING ACT**
**(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**
**On behalf of the Class and the Sub-Class**

56.     Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 55.

57.     Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

58.     California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

59.     Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold the Products with labeling claiming the Products contained "no artificial preservatives" and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

60.     Specifically, Defendant claimed the Products "no artificial preservatives" when the Products contained artificial sodium phosphate and lactic acid.

61.     Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class and Sub-Class Members.

62.     As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property.  Plaintiff reasonably relied upon Defendant's fraudulent statements regarding the Products, namely that they did not know the Products contained artificial preservatives.  In reasonable reliance on Defendant's omissions of material fact and false advertisements, Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT

and other Class and Sub-Class Members purchased the Products. In turn Plaintiff and other Class Members ended up with products that turned out to actually be different than advertised, and therefore Plaintiff and other Class Members have suffered injury in fact.

63. Plaintiff alleges that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

64. Defendant advertised to Plaintiff and other putative class members, through written representations and omissions made by Defendant and its employees, that the Class Products contain "no artificial preservatives"

65. Defendant knew that the Class Products did in fact contain artificial sodium phosphate and lactic acid.

66. Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that contained artificial sodium phosphate and were not as advertised.

67. The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class and Sub-Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**COUNT II**
**VIOLATIONS OF UNFAIR BUSINESS PRACTICES ACT**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**
**On behalf of the Class and Sub-Class**

68. Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 55.

69. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct

FIRST AMENDED CLASS ACTION COMPLAINT

created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

## UNFAIR

70. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

71. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

72. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them fraudulently labeled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class and Sub-Class.

73. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class Products contained "no artificial preservatives" in order to induce them to spend money on said Class Products.  In fact, knowing that Class Products, by their objective terms contained artificial sodium phosphate and lactic acid, unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiff would receive from this feature is nonexistent, when this is typically never the case in situations involving consumer products.  Thus, the injury suffered by Plaintiff and the members of the Class and Sub-Class is not outweighed by any countervailing benefits to consumers.

74. Finally, the injury suffered by Plaintiff and members of the Class and California Sub-Class is not an injury that these consumers could reasonably have avoided.  After Defendant, fraudulently labeled the Class Products as containing "no artificial preservatives"

FIRST AMENDED CLASS ACTION COMPLAINT

the Plaintiff, Class members, and Sub-Class Members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiff and Class and Sub-Class members that the Class Products contained artificial sodium phosphate and are not as advertised as a result. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase the products. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

75.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

<b>FRAUDULENT</b>

76.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

77.    The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

78.    Here, not only were Plaintiff and the Class and Sub-Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products at a price premium even though the Products contained artificial sodium phosphate and lactic acid. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

79.    As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products containing "no artificial preservatives" when in fact the Products contain artificial sodium phosphate and lactic acid.

80.    Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

FIRST AMENDED CLASS ACTION COMPLAINT

**UNLAWFUL**

81.   California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

82.   As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products as containing "no artificial preservatives" when in fact the Products contain artificial sodium phosphate and lactic acid.

83.   Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class and Sub-Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.

84.   Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members. These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

85.   Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class and Sub-Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief.  Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class and Sub-Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## COUNT III
## Violation of Consumer Legal Remedies Act
## (Cal. Civ. Code § 1750 et seq.)
## On behalf of the class and sub-class

86.   Plaintiff incorporates all of the allegations and statements made in paragraphs 1 through 55 above as if fully reiterated herein.

87.   Defendant's actions as detailed above constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1770, to the extent that Defendant violated the following provisions of the CLRA:

    a.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person

has a sponsorship, approval, status, affiliation, or connection which he or she does not have; Cal. Civ. Code § 1770(5);

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; Cal. Civ. Code § 1770(7);

c. Advertising goods or services with intent not to sell them as advertised; Cal. Civ. Code §1770(9);

d. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; Cal. Civ. Code §1770(14); and

e. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; Cal. Civ. Code §1770(16);

88.    Pursuant to *Cal. Civ. Code. §1782(d)* Plaintiff brings this CLRA action seeking injunctive relief on behalf of the general public. On or about November 19, 2025, through his Counsel of record, using certified mail with a return receipt requested, Plaintiff served Defendant with notice of their violations of the CLRA, and asked that Defendant correct, repair, replace, or otherwise rectify the goods and services alleged to be in violation of the CLRA; this correspondence advised Defendant that it must take such action within thirty (30) calendar days, and pointed Defendant to the provisions of the CLRA that Plaintiffs believe to have been violated by Defendant. Defendant has not replied to this notice letter with a letter dated on or before December 19, 2025, and thus refused to adequately correct, repair, replace, or otherwise rectify the issues raised therein

## MISCELLANEOUS

89.    Plaintiff and Classes Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and the Class and Sub-Class, requests the following relief:

FIRST AMENDED CLASS ACTION COMPLAINT

(a)   An order certifying the Class and Sub-Class and appointing Plaintiff as Representative of the Class and Sub-Class;

(b)   An order certifying the undersigned counsel as Class and Sub-Class Counsel;

(c)   An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above;

(d)   Actual damages suffered by Plaintiff and Class and Sub-Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class and Sub-Class Members from the sale of misbranded Class Products during the relevant class period;

(e)   Punitive damages, as allowable, in an amount determined by the Court or jury;

(f)   Any and all statutory enhanced damages;

(g)   All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(h)   Pre- and post-judgment interest; and

(i)   All other relief, general or special, legal and equitable, to which Plaintiff and Class and Sub-Class Members may be justly entitled as deemed by the Court.

Dated:  January 30, 2026          Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, PC

By:      /s/ Todd M. Friedman
          Todd M. Friedman
          Attorney for Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT

## PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled cause. On January 30, 2026, I served a true copy of the First Amended Class Action Complaint on all counsel of record via the ECF Filing System:

Executed on January 30, 2026.

[X] I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

[ ] I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

[X] I hereby certify under the penalty of perjury that the foregoing is true and correct.

By:      /s/ Todd M. Friedman
         Todd M. Friedman, Esq.
         Attorney for Plaintiff

FIRST AMENDED CLASS ACTION COMPLAINT