Shawn Obi (SBN: 288088)
SObi@winston.com
WINSTON & STRAWN LLP
333 S. Grand Ave., Suite 3800
Los Angeles, CA 90071
Telephone: +1 213-615-1700

*Attorney for Defendant*
*BOB EVANS FARMS, INC.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DOTSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOB EVANS FARMS, INC.,<br><br>Defendant. | Case No. 2:25-cv-11993<br><br>Hon. Michelle Williams Court<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: April 24, 2026<br>Time: 1:30 P.M.<br>Place: Courtroom 6A, 6th Floor<br>Complaint Removed: December 18, 2025<br>Amended Complaint: January 30, 2026 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION.................................................................................... 1

II.   ARGUMENT........................................................................................... 1

     **A.**    **P**laintiff has not plausibly alleged any misrepresentation......................... 1

         i.    Plaintiff does not plausibly allege the challenged ingredients are artificial.................................................................................... 1

         ii.   Plaintiff does not allege the challenged ingredients actually act as preservatives in the Products....................................................... 4

         iii.  A reasonable consumer would not be misled. ................................... 4

     **B.**    Plaintiff concedes he does not press a pure omission claim, and his partial omission claim remains incoherent.......................................... 5

     **C.**    Plaintiff lacks statutory standing for unpurchased Products....................... 6

     **D.**    Plaintiff lacks statutory standing to pursue a private and public injunction. ............................................................................... 7

     **E.**    Plaintiff cannot pursue punitive damages........................................... 8

     **F.**    Although Plaintiff offers to dismiss his nationwide claims without prejudice, the Court should dismiss them with prejudice.......................... 8

III.  CONCLUSION...................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Hyland's Inc.*,
300 F.R.D. 643 (C.D. Cal. 2014)................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................5, 8, 11

*In re Cloudera*,
121 F.4th 1180 (9th Cir. 2024)...................................................................6

*Davidson v. Sprout Foods, Inc.*,
106 F.4th 842 (9th Cir. 2024)....................................................................6

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016)......................................................................9

*Fuentes v. Dish Network L.L.C.*,
2023 WL 3549514 (N.D. Cal. May 17, 2023)..........................................12

*Gamino v. Spin Master, Inc.*,
2025 WL 1421907 (C.D. Cal. Mar. 31, 2025)..........................................11

*Granfield v. NVIDIA Corp.*,
2012 WL 2847575 (N.D. Cal. July 11, 2012) ..........................................10

*Grimberg v. United Airlines, Inc.*,
2023 WL 2628708 (C.D. Cal. Jan. 10, 2023)...........................................11

*Guido v. L'Oreal, USA, Inc.*,
384 F.R.D. 468 (C.D. Cal. 2012)..............................................................10

*Hamman v. Cava Grp., Inc.*,
2023 WL 3450654 (S.D. Cal. Feb. 8, 2023)............................................10

*Hayes v. Kraft Heinz Co.*,
2024 WL 4766319 (N.D. Ill. Nov. 13, 2024)..............................................7

*In re Honda Idle Stop Litig.*,
694 F. Supp. 3d 1293 (C.D. Cal. 2023) ...................................................11

ii

*Hu v. Herr Foods, Inc.*,
    251 F. Supp. 3d 813 (E.D. Pa. 2017)..................................................................... 8

*Iglesias v. Arizona Beverages USA, LLC*,
    2023 WL 4053803 (N.D. Cal. June 16, 2023)...................................................... 7

*Ivie v. Kraft Foods Glob., Inc.*,
    961 F. Supp. 2d 1033 (N.D. Cal. 2013) ............................................................... 8

*Johns v. Bayer Corp.*,
    2010 WL 476688 (S.D. Cal. Feb. 9, 2010)....................................................... 10

*Lozano v. Bowmar Nutrition LLC*,
    2021 WL 4459660 (C.D. Cal. Aug. 19, 2021)................................................... 11

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021)............................................................................. 8, 9

*Ortega v. Nat. Balance, Inc.*,
    300 F.R.D. 422 (C.D. Cal. 2014)...................................................................... 10

*Rahman v. Mott's LLP*,
    2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) ............................................. 11, 12

*Ringler v. J.M. Smucker Co.*,
    783 F. Supp. 3d 1129 (C.D. Cal. 2025) .............................................................. 9

*Simmons v. Target Corp.*,
    2018 WL 6167924 (C.D. Cal. Aug. 20, 2018).................................................. 11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) ............................................................ 10

*Valencia v. Snapple Beverage Corp.*,
    2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024)..................................................... 6

*Von Koenig v. Snapple Beverage Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010)............................................................ 10

**Statutes**

28 U.S.C. § 1404(a) .............................................................................................. 12

**Other Authorities**

21 C.F.R. § 184.1061(c)(1)...................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 11

Jane E. Henney et al., *Strategies to Reduce Sodium Intake in the United States*, Inst. of
    Med. Of the Nat'l Acad. 98, 109 (2010),
    https://www.ncbi.nlm.nih.gov/books/NBK50956/pdf/Bookshelf_NBK50956.pdf. 8

P.S. Rosshaug et al., *Modeling the Growth of* Listeria Monocytogenes *in Soft Blue-
    White Cheese*, 78 Applied & Envtl'l Microbiology 8508, 8509-10 (Dec. 2012),
    https://pubmed.ncbi.nlm.nih.gov/22983971........................................................ 7

Peter Nielsen, *Natural - Synthetic - Artificial!*,
    Artificial DNA: PNA & XNA 58, 58-59 (2010)
    http://pmc.ncbi.nim.nih.gov/articles/PMC3109441/pdf/adna0101_0058.pdf......... 6

iv

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I. INTRODUCTION

Plaintiff's opposition to Defendant's motion to dismiss does not rescue his fundamentally flawed claims. His theory of liability primarily depends on three inadequately pled propositions: (1) that sodium phosphate and lactic acid are "artificial;" (2) that these ingredients act as preservatives in the Products; and (3) that a reasonable consumer would interpret the label in the way Plaintiff alleges. None cross the line from "conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As for Plaintiff's remaining arguments—defending his omission claims, statutory standing for unpurchased products and injunctive relief, and his ability to seek punitive damages—they fare no better. Plaintiff even offers to dismiss his nationwide class allegations.

For the reasons below, the Court should dismiss the First Amended Complaint (ECF No. 22) ("Complaint" or "Compl.").

### II. ARGUMENT

#### A. Plaintiff has not plausibly alleged any misrepresentation.

##### i. Plaintiff does not plausibly allege the challenged ingredients are artificial.

The complaint's definition of "artificial"—"made, produced, or done by people"—is so broad that it swallows the entire food industry. ECF No. 22 ¶ 23. Plaintiff's opposition does not cure the complaint's core deficiency—it deepens it.

Plaintiff's definition encompasses virtually every ingredient. Producing flour requires a person to mill grain. Producing oil requires a person to press olives or seeds. Producing milk requires a person to extract it from an animal source and pasteurize it. Under Plaintiff's definition, each ingredient in the Product is "artificial," and a reasonable consumer purchasing them must believe that the ingredients were not "made, produced, or done by people" in any way. No reasonable consumer holds that belief.

Plaintiff's attempt to characterize terms like "synthetic," "manufactured," and "chemical" as "supporting factual allegations" rather than competing definitions does not

1

help. *See* ECF No. 35 at 20. Terms like "chemical" add nothing to the analysis, since all compounds have a chemical formula and are therefore chemicals of some sort. Consider sodium chloride, which is commonly known as table salt. That compound is a "chemical" that can be used to deter spoilage. *See id.* at 16, 35. Given that humans can find sodium chloride in nature, it is hard to see how the term "chemical" can act as a "supporting factual allegation" for the word "artificial." If anything, the term "chemical" ***contradicts*** Plaintiff's theory of artificiality. There can be both natural chemicals and artificial chemicals.

So too with the word "synthetic." As one court has explained, "A reasonable consumer would not think that a compound found in nature [such as citric acid] is artificial even if it is produced in a different way than nature produces it"—i.e., "synthetic." *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476, at *6 (S.D.N.Y. Mar. 18, 2024). Likewise, an academic scholar has explained that a compound that exists in nature—such as vitamin B12—can still be created by man but nevertheless not be artificial. [1] Plaintiff's attempt to lump synthetic, chemical, manufactured, and artificial together leaves the Court and Defendant "guessing 'what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024). As the Ninth Circuit has explained, if a pleading alleging fraud requires too much guesswork on the meaning of the alleged misrepresentation, the pleading has not satisfied Rule 9(b)'s particularity requirement. *See In re Cloudera*, 121 F.4th 1180, 1187 (9th Cir. 2024).

Plaintiff's discussion of sodium phosphate compounds this problem. He concedes that "sodium phosphates exist in natural mediums," but he nevertheless asserts that "they do not exist as pure compounds in those mediums." ECF No. 35 at 11. That concession undermines his theory of deception. Isolating sodium phosphate from its "natural

---

[1] Peter Nielsen, *Natural – Synthetic – Artificial!*, Artificial DNA: PNA & XNA 58, 58–59 (2010) http://pmc.ncbi.nim.nih.gov/articles/PMC3109441/pdf/adna0101_0058.pdf.

2

medium" through an acid-base reaction does not transform sodium phosphate into something "artificial" any more than extracting table salt from seawater renders that ingredient artificial.[2]

Plaintiff's reliance on *Iglesias v. Arizona Beverages USA, LLC* does not help. He cites *Iglesias* for the proposition that "there is nothing in the record to suggest that [sodium phosphates are] naturally occurring." ECF No. 35 at 12 (quoting 2023 WL 4053803, at *4 (N.D. Cal. June 16, 2023)). But *Iglesias* does not discuss sodium phosphate. The quoted language concerns high fructose corn syrup ("HFCS"). *See* 2023 WL 4053803, at *4. The Court should not accept Plaintiff's attempt to transpose a holding about HFCS onto sodium phosphate—a compound that, by Plaintiff's own concession, "exist[s] in natural mediums" and requires extraction.

As for lactic acid, Plaintiff baldly alleges that all manufactured lactic acid is "artificial" because its creation requires an acid-base reaction. ECF No. 22 ¶¶ 17–18. But that general pronouncement does not adequately account for the specific goods at issue: refrigerated macaroni and cheese. Nowhere does Plaintiff engage with the fact that lactic acid is a typical **byproduct** of making cheese. *See* ECF No. 31 at 10 & n.2 (explaining lactic acid and cheese is created after exposing pasteurized milk to a culture). Because a cheese's pH and lactic acid levels changed based on the number of days the cheese is aged, an acid-base reaction is **necessarily required** in any cheesemaking process.[3] To plausibly allege that the lactic acid is artificial, Plaintiff must cogently explain why an ordinary byproduct from cheesemaking is always artificial. By not connecting these dots for macaroni and cheese specifically, Plaintiff has not plausibly alleged the Products bear a false or misleading label.

---

[2] The Court should find *Hayes v. Kraft Heinz Co.* unpersuasive. *See* 2024 WL 4766319, at *3–4 (N.D. Ill. Nov. 13, 2024). *Hayes* repeats the same error that Plaintiff does: It conflates the word "synthetic" with "artificial" and does not explain why those terms are fully synonymous. *See id.*

[3] *See* P.S. Rosshaug et al., *Modeling the Growth of* Listeria Monocytogenes *in Soft Blue-White Cheese*, 78 Applied & Envtl'l Microbiology 8508, 8509–10 (Dec. 2012), https://pubmed.ncbi.nlm.nih.gov/22983971.

3

### ii.     Plaintiff does not allege the challenged ingredients actually act as preservatives in the Products.

Likewise, Plaintiff has not adequately alleged that the lactic acid and sodium phosphate actually function as preservatives in the Products, as opposed to serving their well-documented roles as emulsifiers, pH regulators, and flavor agents. *See Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 821 (E.D. Pa. 2017) (rejecting plaintiff's argument that an ingredient that *can possibly* act as a preservative "actually" acts as a preservative in a particular product); *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013) (rejecting "bare, conclusory assertion" that two ingredients must simulate, resemble, or reinforce lemon flavor when they could serve other functions).

Plaintiff's hypothetical to show otherwise is strained. He argues that strychnine—also known as rat poison—remains a poison even when it functions as a stimulant, and that lactic acid and sodium phosphate are likewise "categorically" preservatives regardless of their intended function. ECF No. 35 at 14–15. But strychnine is toxic in ***every*** context—its harmful character is inherent, not a product of what role it plays in a given formulation. Lactic acid and sodium phosphate do not have a categorical function. The FDA recognizes that lactic acid can function as a "flavor enhancer," "flavoring agent," and "solvent." 21 C.F.R. § 184.1061(c)(1). An article that Plaintiff cites acknowledges sodium phosphate as a buffering, neutralizing, and emulsifying agent—not necessarily a preservative in every context.[4]

Without any specific allegations that the lactic acid and sodium phosphate in the Products function as preservatives, Plaintiff claims remain in "neutral territory" and do not cross "into the realm of plausible liability." *Twombly*, 550 U.S. at 557 & n.5.

### iii.     A reasonable consumer would not be misled.

The Ninth Circuit's decision in *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) controls. *Moore* stands for this principle: "[T]he reasonable consumer standard

---

[4] Jane E. Henney et al., *Strategies to Reduce Sodium Intake in the United States*, Inst. of Med. Of the Nat'l Acad. 98, 99, 109 (2010), https://www.ncbi.nlm.nih.gov/books/NBK50956/pdf/Bookshelf_NBK50956.pdf.

4

requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled"—not a "mere possibility" of misunderstanding. *Id.* (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).

Thus, the relevant question is not whether the Products are preservative-free. It is whether a reasonable consumer who sees a refrigerated macaroni-and-cheese product would think that "no artificial preservatives" means that any ingredient that acts as a preservative—such as salt—is free from human involvement. The answer is no. A reasonable consumer understands that the ingredients in a commercial food product require *some* human intervention. Dismissal is warranted for the same reason it was warranted in *Moore*: Plaintiff asks the Court to accept an impossible interpretation that no reasonable consumer would hold. *Id.* at 883.

### B. Plaintiff concedes he does not press a pure omission claim, and his partial omission claim remains incoherent.

Plaintiff tries to frame his omission claims as "actionable because they are tethered to Defendant's affirmative representation." ECF No. 35 at 22. This argument is hard to follow.

As to partial omission, Plaintiff seems to posit that this claim can coexist with a claim premised on an outright falsehood. *See id.* at 22–23. By Defendant's read, Plaintiff suggests that an additional disclosure would have cured the challenged statement. *See id.* at 23 (faulting Defendant for "represent[ing] that the Products contain 'no artificial preservatives,' while omitting that the Products in fact contain artificially produced preservatives"). So understood, Plaintiff's partial omission theory makes little sense.

A partial omission claim requires the challenged representation to be technically true, but not completely true due to an omission. *Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1129, 1241–42 (C.D. Cal. 2025). But Plaintiff's Complaint never says the challenged "no artificial preservatives" statement carries *any* truth. The "proper" label suggested by Plaintiff illustrates the illogical nature of his position. According to Plaintiff, the Products'

5

packaging must declare that they ***do not*** contain artificial preservatives in one section, but simultaneously declare that they ***do*** contain artificial preservatives in another section. Courts have rejected this precise argument. *See Ringler*, 783 F. Supp. 3d at 1242; *Hamman v. Cava Grp., Inc.*, 2023 WL 3450654, at *9 (S.D. Cal. Feb. 8, 2023). The Court should do the same and dismiss Plaintiff's partial omission claim.

As for a pure omission claim, it seems Plaintiff concedes he does not assert one—though he says so obliquely. *See* ECF No. 35 at 24 ("Plaintiff's theory does not depend on a free-standing duty to disclose . . . ."). To the extent Plaintiff presses a pure omission claim, his inadequate briefing on issues relevant to the matter—such as the *LiMandri* factors and whether the Products' purported defect affect their central function—forfeits the issue. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (explaining plaintiffs abandon an issue due to inadequate briefing); L.R. 7-9 (requiring memoranda to contain "all" reasons in opposition to a motion to dismiss and "the points and authorities upon which" plaintiffs will rely). The Court should dismiss Plaintiff's partial and pure omission claims.

## C. Plaintiff lacks statutory standing for unpurchased Products.

Plaintiff lacks statutory standing to pursue claims for Products he did not purchase. *Johns v. Bayer Corp.*, 2010 WL 476688, at *4–5 (S.D. Cal. Feb. 9, 2010); *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012). To resist this outcome, Plaintiff cites a litany of cases that were largely issued at the class certification stage—not the motion to dismiss stage. *See* ECF No. 35 at 25 & n.4. These cases either support Defendant's position or are completely silent on the question of statutory standing. *See, e.g.*, *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 666 (C.D. Cal. 2014) (confirming that at least one named plaintiff actually bought each product listed in the complaint, thus undermining Plaintiff's position); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010) (silent on statutory standing for unpurchased products); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) (same); *Forcellati v. Hylands, Inc.*, 2014 WL

6

1410264 (C.D. Cal. Apr. 9, 2014); (same); *Guido v. L'Oreal, USA, Inc.*, 384 F.R.D. 468, 472, 475 (C.D. Cal. 2012) (same, presumably because only one product was at issue); *Ortega v. Nat. Balance, Inc.*, 300 F.R.D. 422 (C.D. Cal. 2014) (accepting statutory standing question as undisputed).

Courts in this district have routinely held that statutory standing must be established before proceeding to discovery and class certification. *In re Honda Idle Stop Litig.*, 694 F. Supp. 3d 1293, 1303 (C.D. Cal. 2023); *Lozano v. Bowmar Nutrition LLC*, 2021 WL 4459660, at *3 (C.D. Cal. Aug. 19, 2021). Indeed, that was the Supreme Court's mandate in *Twombly*. There, the Supreme Court directed courts to "tak[e] care to require allegations" to plausibly allege statutory standing under Rule 12(b)(6) before subjecting a defendant to "the potentially enormous expense of discovery." *See* 550 U.S. at 559 (quotation and citation omitted). The Court should accordingly dismiss Plaintiff's claims asserted on behalf of Products he did not purchase. There is no need to authorize discovery on unpurchased Products or delay a ruling until the class certification stage.[5]

**D.    Plaintiff lacks statutory standing to pursue a private and public injunction.**

Plaintiff lacks statutory standing to secure injunctive relief. As Defendant previously explained, Plaintiff lacks statutory standing to secure a private injunction. *See* ECF No. 31 at 22. That is because Plaintiff can avoid future injury by reading the ingredient panel for mentions of lactic acid and sodium phosphate. *See Rahman v. Mott's LLP*, 2014 WL 5282106, at *5 (N.D. Cal. Oct. 15, 2014) (dismissing request for injunctive relief on this basis); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 (2013) (explaining plaintiffs "cannot manufacture standing merely by inflicting harm on

---

[5] Because Plaintiff's opposition does not discuss the substantial similarity test, he has abandoned any argument on this point. *See Stichting Pensioenfonds*, 802 F. Supp. 2d at 1132; L.R. 7-9 (requiring memoranda to contain "all" reasons in opposition to a motion to dismiss and "the points and authorities upon which" plaintiffs will rely). Regardless, the substantial similarity test is "at odds with the statutory standing requirements" of the California consumer protection laws at issue. *Zakikhan v. Hyundai Motor Co.*, 2021 WL 4805454, at *6 (C.D. Cal. June 28, 2021).

7

themselves").

Plaintiff points to his prayer for a public injunction to avoid dismissal. *See* ECF No. 35 at 30. But *Rahman* forecloses this argument. There, the court found the plaintiff lacked statutory standing and dismissed *all* injunctive relief claims without preserving any claim on a public-injunction theory. *See* 2014 WL 5282106, at *5; *cf. Fuentes v. Dish Network L.L.C.*, 2023 WL 3549514, at *1 (N.D. Cal. May 17, 2023) (explaining a plaintiff who cannot obtain a private injunction cannot seek a public injunction because the latter "is sought by an aggrieved person in an action filed on his or her own behalf, not on behalf of the general public, even though the primary purpose . . . is . . . to prohibit and enjoin conduct that is injurious to the general public) (citation and quotation omitted). The Court should follow *Rahman* and dismiss Plaintiff's prayer for injunctive relief.

### E.    Plaintiff cannot pursue punitive damages.

Plaintiff's Complaint contains insufficient factual allegations to support his prayer for punitive damages. His sole argument—that his CLRA claims are "indicative of fraudulent conduct"—rests on pure speculation and requires the Court to make an impermissible series of factual inferences. ECF No. 35 at 27.

Because Plaintiff points to no specific allegation that identifies an officer, director, or managing agent who allegedly authorized the labeling statement with malice, fraud, or oppression, the Court should dismiss his claim for punitive damages. *See, e.g.*, *Simmons v. Target Corp.*, 2018 WL 6167924, at *4 (C.D. Cal. Aug. 20, 2018); *Grimberg v. United Airlines, Inc.*, 2023 WL 2628708, at *3 (C.D. Cal. Jan. 10, 2023); *Gamino v. Spin Master, Inc.*, 2025 WL 1421907, at *11 (C.D. Cal. Mar. 31, 2025).

### F.    Although Plaintiff offers to dismiss his nationwide claims without prejudice, the Court should dismiss them with prejudice.

Plaintiff has offered to dismiss his claims on behalf of a nationwide class without prejudice. ECF No. 35 at 31. As Defendant notes in its reply filed in support of its motion to transfer, this gesture appears to be an attempt to manipulate the 28 U.S.C. § 1404(a) factors to avoid a transfer. For the reasons stated in that reply brief, the Court should not

8

reward this behavior.

In addition, Plaintiff's voluntary dismissal does not truly narrow the issues before the Court—it simply kicks them down the road. Because Plaintiff will dismiss the nationwide claims *without* prejudice, Plaintiff could seek leave to resurrect them later. For the reasons stated in its opening brief, the Court should apply California's presumption against the extraterritorial application of its consumer protection statutes and choice-of-law test to dismiss Plaintiff's nationwide claims *with* prejudice. *See* ECF No. 31 at 17–19.

## III. CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion to dismiss.

9

Dated: April 10, 2026                              WINSTON & STRAWN LLP

                                                   By: */s/ Shawn Obi*

                                                   Shawn Obi (SBN: 288088)
                                                   SObi@winston.com
                                                   333 South Grand Avenue, Suite 3800
                                                   Los Angeles, CA 90071
                                                   Telephone: +1 213-615-1700

                                                   *Attorney for Defendant*
                                                   *BOB EVANS FARMS, INC.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief does not exceed the Court's word-count and page-count limitations because it contains 2,870 words and spans 9 pages. *See* L.R. 11-6-1; ECF No. 12 ¶ 6(c).

Dated: April 10, 2026                              */s/ Shawn Obi*
                                                   Shawn Obi

10