Shawn Obi (SBN: 288088)
SObi@winston.com
WINSTON & STRAWN LLP
333 S. Grand Ave., Suite 3800
Los Angeles, CA 90071
Telephone: +1 213-615-1700

*Attorney for Defendant*
*BOB EVANS FARMS, INC.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DOTSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOB EVANS FARMS, INC.,<br><br>Defendant. | Case No. 2:25-cv-11993<br><br>Hon. Michelle Williams Court<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. SECTION 1404(A)**<br><br>Date: April 24, 2026<br>Time: 1:30 P.M.<br>Place: Courtroom 6A, 6th Floor<br>Complaint Removed: December 18, 2025<br>Amended Complaint: January 30, 2026 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT........................................................................................................ 2

    A.    Plaintiff does not dispute that this action could have been brought in the Southern District of Ohio.................................................................... 2

    B.    Convenience and the Interests of Justice Strongly Favor Transfer to the Southern District of Ohio.................................................................... 2

        i.    The most important factor—convenience of the witnesses— overwhelmingly favors transfer...................................................... 2

        ii.   The most significant contacts and conduct occurred in Ohio............. 4

        iii.  Plaintiff's choice of forum is entitled to minimal weight, and his post-motion efforts do not affect this conclusion. ............................ 5

        iv.   Ohio's interest is greater than California's. ..................................... 6

        v.    The location of evidence supports transfer. ..................................... 7

        vi.   The familiarity-with-governing-law factor is neutral....................... 8

        vii.  Plaintiff accuses Defendant of forum shopping, but the record suggests the opposite is true......................................................... 8

III.  CONCLUSION ................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Mold (Heifei) Co. v. AliphCom*,
2016 WL 8252923 (C.D. Cal. Oct. 17, 2016) ........................................................... 7

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
571 U.S. 49 (2013) ................................................................................................. 8

*Forsher v. J.M. Smucker Co.*,
612 F. Supp. 3d 714 (S.D. Ohio 2020) .................................................................... 8

*Greben v. Cinmar, LLC*,
2025 WL 1765916 (C.D. Cal. May 30, 2025) ..................................................*passim*

*Hanson v. Denckla*,
357 U.S. 235 (1958) ......................................................................................... 1, 4, 5

*Jovel v. i-Health, Inc.*,
2012 WL 5470057 (C.D. Cal. Nov. 8, 2012) ........................................................... 3

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ............................................................................... 7

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987) ................................................................................... 5

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017) ....................................................................................... 1, 4, 5

*Meza v. Procter & Gamble Co.*,
2023 WL 3267861 (C.D. Cal. Apr. 27, 2023) .......................................................... 6

*Montenegro v. Johnson & Johnson Consumer, Inc.*,
2024 WL 4720925 (C.D. Cal. Sep. 16, 2024) .......................................................... 4

*Moreno v. Johnson & Johnson Consumer Inc.*,
2021 WL 12302429 (C.D. Cal. Oct. 5, 2021) ................................................... 2, 4, 6

*Noohi v. Hershey Co.*,
2026 WL 713034 (C.D. Cal. Feb. 20, 2026) ....................................................*passim*

*Saleh v. Titan Corp.*,
    361 F. Supp. 2d 1152 (S.D. Cal. 2005) ............................................................................ 3

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) ........................................................................... 2

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ...................................................................................... 1, 5

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) .................................................................................................. 1, 5

*In re Volkswagen of Am.*,
    545 F.3d 304 (5th Cir. 2008) ........................................................................................ 7

**Statutes**

28 U.S.C. § 1404(a) ...........................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 30(b)(6)............................................................................................... 1, 3

C.D. Cal. L.R. 7-6................................................................................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff's arguments against transfer miss the mark on every front. As Defendant explained in its opening brief, the Section 1404(a) factors favor transfer. Plaintiff's arguments to the contrary draw from inapplicable caselaw, rely on a manipulation of the factors, and ignore the great weight of authority.

For example, Plaintiff cites *Hanson v. Denckla*, 357 U.S. 235 (1958), to argue that Defendant's "purposeful availment" of California's benefits weighs against transfer. *See* ECF No. 34 at 13. But *Hanson* is a 68-year-old personal jurisdiction case that has nothing to do with Section 1404(a). Plaintiff also cites *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), to suggest that California's consumer-protection statutes require retaining venue here. ECF No. 34 at 13. But *McGill* is similarly inapposite. That case concerns the enforceability of a contract provision. 2 Cal. 5th at 956. *McGill* never discusses Section 1404(a).

Plaintiff also tries to maneuver his way out of a transfer by offering two concessions. First, he appears to limit his offensive depositions to a single Rule 30(b)(6) corporate-representative deposition. ECF No. 34 at 10. Second, Plaintiff purports to have dismissed his nationwide class allegations, though he has not amended his First Amended Complaint ("Complaint" or "Compl."). *Id.* at 11–12. These gestures are purely tactical and should not factor into the Court's transfer analysis. The Supreme Court has instructed that courts should construe Section 1404(a) in a manner that prevents a party from defeating transfer through "their own deliberate acts or omissions." *Van Dusen v. Barrack*, 376 U.S. 612, 623–24 (1964); *see also In re TikTok, Inc.*, 85 F.4th 352, 362–63 (5th Cir. 2023) (granting writ of mandamus where district court considered post-motion events to deny transfer). In the same spirit, the Court should not find that Plaintiff's narrowing of his discovery rights and voluntary dismissal of his nationwide class are developments that weigh against transfer. Giving weight to these ploys would reward gamesmanship.

As Defendant has argued and continues to argue, the Section 1404(a) factors favor

1

transfer. The Court should grant Defendant's motion.

## II.   ARGUMENT

### A.   Plaintiff does not dispute that this action could have been brought in the Southern District of Ohio.

Defendant's opening brief demonstrated that the Southern District of Ohio satisfies all three prerequisites for transfer: subject-matter jurisdiction, personal jurisdiction, and proper venue. *See* ECF No. 32 at 3–4. Because Plaintiff's opposition does not contest this, he has forfeited this issue. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

### B.   Convenience and the Interests of Justice Strongly Favor Transfer to the Southern District of Ohio.

#### i.   The most important factor—convenience of the witnesses—overwhelmingly favors transfer.

In a Section 1404(a) analysis, courts often consider the convenience of the witnesses as "the most important factor." *Greben v. Cinmar, LLC*, 2025 WL 1765916, at *6 (C.D. Cal. May 30, 2025). When undertaking this inquiry, courts assess "not only the number of witnesses, but also the nature and quality of their testimony." *Id.*

To support its transfer motion, Defendant filed a declaration that identified five potential witnesses by name, title, and testimony subject matter. *See* ECF Nos. 32–33. Each potential witness works in New Albany, Ohio, and, collectively, they have knowledge of the Product's formulation, ingredient sourcing, labeling, marketing, and sales strategy. *See* ECF No. 33 ¶¶ 6–7. All topics touch on key issues raised by Plaintiff's Complaint.

By contrast, Plaintiff has not identified a single witness he intends to call other than himself. Courts in this district consistently find this imbalance dispositive in product-mislabeling cases. *See Moreno v. Johnson & Johnson Consumer Inc.*, 2021 WL 12302429, at *2–3 (C.D. Cal. Oct. 5, 2021) (granting transfer because "the trial testimony of Defendant's employees about the Products is more important to the adjudication of this

2

consumer class action than the [singular] testimony of the named Plaintiff"); *Jovel v. i-Health, Inc.*, 2012 WL 5470057, at *5 (C.D. Cal. Nov. 8, 2012) (granting transfer where the plaintiff did not identify "any witnesses besides herself located in California" and her testimony was "far less central to the case than the testimony of the [defendant's] executive and scientific teams").

Plaintiff appears to sidestep this factor by offering to conduct a single, virtual Rule 30(b)(6) deposition of a corporate representative. ECF No. 34 at 10. For two reasons, the Court should not give credence to this concession.

First, a video deposition does not eliminate the need for live testimony at trial. "While video depositions of the witnesses may be possible, the witnesses will still need to testify in person if the case proceeds to trial, and thus the Court is still obligated to consider how these witnesses would be impacted by the choice of forum." *Noohi v. The Hershey Co.*, 2026 WL 713034, at *6 (C.D. Cal. Feb. 20, 2026). A Section 1404(a) analysis thus requires assessing the inconvenience borne by witnesses across the full arc of litigation— not merely at the deposition stage. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1165 (S.D. Cal. 2005) ("In assessing the effect of a transfer on the convenience of witnesses, courts consider the effect of a transfer on the availability of certain witnesses, *and* their live testimony, at trial.") (emphasis added).

Second, Plaintiff's offer to narrow his discovery rights is specious. It appears that Plaintiff will sacrifice his own discovery interests (and that of his putative class members) to preserve this forum. Ordinarily, a litigant seeks to obtain *more* discovery—not less. One would therefore expect a class action plaintiff to maximize discovery and probe the knowledge of multiple persons, such as those who played a direct role in product formulation, marketing, and sales. Plaintiff has chosen to forgo these avenues. Although his motivation is unclear, the record suggests that he is attempting to minimize the "witness count" of each party and manipulate the convenience-of-the-witness factor. The Court should not reward such gamesmanship.

3

Because Defendant has named five potential witnesses with key knowledge of the issues implicated in this case and Plaintiff has only named himself, the convenience of the witnesses strongly favors transfer.

### ii.   The most significant contacts and conduct occurred in Ohio.

Plaintiff erroneously posits that California "has the most significant contacts" because the transaction occurred here and California's consumer-protection statutes govern. ECF No. 34 at 10–11. This argument improperly conflates the substantive law that applies to Plaintiff's claims with the Section 1404(a) contacts analysis.

Courts have repeatedly found that in a false-advertising case, the contacts that matter most are not where the plaintiff made a purchase, but when the defendant made the challenged labeling and marketing decisions. *Greben*, 2025 WL 1765916, at *4; *Montenegro v. Johnson & Johnson Consumer, Inc.*, 2024 WL 4720925, at *4 (C.D. Cal. Sep. 16, 2024); *Moreno*, 2021 WL 12302429, at *3.

Here, the "heart of the matter" plainly lies in New Albany, Ohio—where Defendant is headquartered, where its executive and administrative functions related to Product development, packaging, labeling, and marketing are performed, and where the employees connected to the challenged label statement work. *See* ECF No. 33 ¶¶ 5–7. Plaintiff's contacts with this forum, by contrast, consist of a single purchase of refrigerated macaroni and cheese from an Amazon Fresh store. ECF No. 22 ¶ 25. A recent decision from this Court found that this factor "supports transferring this matter" on materially identical facts—where the plaintiff's connections "boil[ed] down to her residence in [this] district and the fact that she purchased a single, six-ounce bag of cheese puffs at a local supermarket." *Noohi v. Hershey*, 2026 WL 713034, at *4.

Plaintiff's reliance on *Hanson* and *McGill* to suggest otherwise is misplaced. *See* ECF No. 34 at 13. He cites *Hanson* for the proposition that Defendant "deliberately avail[ed] itself to the benefits of the laws and protections of California by purposely directing the sales of its products to California residents." *Id*. But *Hanson* has nothing to

do with a Section 1404(a) transfer. Rather, *Hanson* addresses the "purposeful availment" prong of the specific personal-jurisdiction test in the context of assets held in trust. *See* 357 U.S. at 238. And *McGill* assessed whether a contract provision that prohibited filing certain claims in any forum violated California public policy. *See* 2 Cal. 5th at 951. Because neither case discusses Section 1404(a), they offer little, if any, analogous value. The "most important contacts" factor heavily favors transfer.

### iii. Plaintiff's choice of forum is entitled to minimal weight, and his post-motion efforts do not affect this conclusion.

"The general rule is that a plaintiff's choice of forum is afforded substantial weight," but that deference diminishes significantly in a class action—particularly one in which the plaintiff seeks to represent a nationwide class. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (explaining that "when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight").

Plaintiff sues on behalf of a putative nationwide class. ECF No. 22 ¶ 43. His assertion that he "voluntarily dismissed his nationwide claims," ECF No. 34 at 5, does not alter this reality for three reasons.

First, the Complaint still contains nationwide class allegations. Plaintiff has not filed a second amended complaint excising those allegations, nor has he sought leave to amend. A bare statement in a brief that Plaintiff "agreed to dismiss his nationwide claims" does not amend the operative Complaint.

Second, even if Plaintiff had amended his Complaint, the Court should view this strategic maneuver with skepticism. Plaintiff filed his nationwide class allegations in December 2025 and has stood by them for months. *See* ECF No. 1. It is convenient that he has only announced a voluntary dismissal of the nationwide class after Defendant moved to transfer this action. The Supreme Court has directed courts to avoid construing Section 1404(a) in a manner that allows a party to defeat transfer through "[his] own deliberate acts or omissions." *Van Dusen*, 376 U.S. at 623–24; *see also In re TikTok*, 85 F.4th at 362–63 (granting writ of mandamus where district court considered post-motion events to

5

deny transfer). Consistent with that principle, the Court should disregard Plaintiff's post-motion actions. If anything, the Court should find that these post-motion acts *favor* transfer. *See Meza v. Procter & Gamble Co.*, 2023 WL 3267861, at *6 (C.D. Cal. Apr. 27, 2023) (granting transfer because plaintiff engaged in forum shopping and a transfer "would serve as a useful deterrent").

Third, even if Plaintiff's claims were limited to a California subclass, his choice of forum would still deserve less deference because "the parties and the action lack significant connection to this forum." *Greben*, 2025 WL 1765916, at *4. Plaintiff's sole connection is a single purchase; all relevant corporate conduct occurred in Ohio. As this Court recently explained, "[T]here is nothing about [Plaintiff's] experience unique to this District, and the [proposed class] purportedly suffered the exact same harm in seemingly every single district across the nation." *Noohi v. Hershey*, 2026 WL 713034, at *4 (citation omitted).

Plaintiff also argues that the Los Angeles Superior Court was his "first and primary choice of venue" and that this Court should therefore credit his forum preference more heavily. But Plaintiff's original state-court filing does not insulate his choice of forum from the Section 1404(a) analysis; the relevant inquiry is whether the current forum has meaningful connections to the dispute, not whether Plaintiff preferred a state-court venue before removal.

This factor supports transfer.

### iv.    Ohio's interest is greater than California's.

Plaintiff argues that "California Courts have a localized interest in the resolution of Plaintiff's FAL, UCL, and CLRA claims because the transaction occurred here in California." ECF No. 34 at 15. California undeniably has an interest in protecting its consumers. But that interest "is not much different from the interest all other states have in this case." *Moreno*, 2021 WL 12302429, at *4. Ohio, however, "has the additional interest in ensuring that corporations that reside and are headquartered there do not engage

in false advertising." *Greben*, 2025 WL 1765916, at *5; *Noohi*, 2026 WL 713034, at *5.

Because this controversy is Ohio-centric—the challenged labeling decisions were made there, the responsible employees work there, and Defendant is headquartered there—this factor favors transfer.

### v. The location of evidence supports transfer.

Defendant's relevant records—both electronic and physical—are located at its principal place of business in New Albany, Ohio. ECF 33 ¶ 5. Courts consistently recognize that, although "electronic developments have diminished the need for paper copies available in only one forum . . . costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored." *Ace Mold (Heifei) Co. v. AliphCom*, 2016 WL 8252923, at *3 (C.D. Cal. Oct. 17, 2016) (citation omitted); *see also In re Volkswagen of Am.*, 545 F.3d 304, 316 (5th Cir. 2008) (en banc) ("That access to some sources of proof presents a lesser inconvenience now than it might have been absent recent developments does not render this factor superfluous."); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) ("[W]hile electronic storage of documents makes them more widely accessible than was true in the past, that does not make the sources-of-proof factor irrelevant.").

Plaintiff challenges the Roche Declaration as containing "bare assertions" and argues that Defendant's data is likely stored in Microsoft data centers throughout the United States. ECF No. 34 at 14. This argument misses a key point. Even if some electronic data resides on servers, Defendant's physical storage devices, hard copies of certain documents, and preserved Product samples still remain in Ohio. ECF No. 33 ¶ 5.

Moreover, Plaintiff's speculation about Microsoft data centers is entirely unsupported by any declaration. The Local Rules provide that "[f]actual contentions involved in any motion and opposition to motions shall be presented, heard, and determined upon declaration[.]" L.R. 7-6. Defendant, by contrast, submitted a declaration. ECF No. 33. The Court should credit sworn testimony over Plaintiff's unsupported conjecture.

### vi.   The familiarity-with-governing-law factor is neutral.

Although Plaintiff argues that Ohio federal courts are "undoubtably less familiar" with the UCL, CLRA, and FAL than this Court, ECF No. 34 at 16–17, he brushes aside the bevy of caselaw that says this factor weighs neutrally. The Supreme Court itself has said "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 67 (2013). District courts consistently make the same finding and conclude that this factor weighs neutrally. *Greben*, 2025 WL 1765916, at *5. And Ohio federal courts have demonstrated their competence in applying California consumer protection laws. *See Forsher v. J.M. Smucker Co.*, 612 F. Supp. 3d 714, 719, 729 (S.D. Ohio 2020). This factor weighs neutrally. *Greben*, 2025 WL 1765916, at *5.

### vii.   Plaintiff accuses Defendant of forum shopping, but the record suggests the opposite is true.

Plaintiff accuses Defendant of "blatant forum shopping designed to help Defendant escape the Ninth Circuit." ECF No. 34 at 5. This accusation unnecessarily casts aspersions. A Section 1404(a) motion to transfer is a procedural mechanism that Congress enacted to promote efficiency and reduce litigation costs. Invoking it to achieve these goals is not insidious forum shopping.

As Defendant has explained, it has a legitimate reason for seeking transfer: Its corporate headquarters, key potential witnesses, and primary physical evidence are in New Albany, Ohio. If a party has engaged in strategic maneuvering, the record suggests it is Plaintiff. After Defendant moved to transfer this case, Plaintiff attempted to narrow his claims to a California-only class to manipulate the Section 1404(a) factors. *Id.* What is more, Plaintiff will apparently narrow his offensive depositions to only one. *See id.* at 10. These post-motion efforts bear the hallmark of forum shopping. The Court should not reward such gamesmanship.

## III.    CONCLUSION

On balance, each Section 1404(a) factor either favors transfer or weighs neutrally. The convenience of the witnesses—the most important factor—overwhelmingly favors transfer. The parties' contacts with the respective forums, the interests of justice, the location of evidence, and the relative interests of the competing states all point toward the Southern District of Ohio. Plaintiff's choice of forum, diminished by the nationwide class allegations and attenuated connection to California, does not overcome this weight.

This case is nearly identical to *Noohi v. Hershey*, in which this Court granted transfer on a substantially identical record—a consumer-labeling class action where the defendant's headquarters, witnesses, and evidence were concentrated in a single out-of-state district and the plaintiff's connection to the forum consisted of a single purchase. The Court should chart the same course here.

For these reasons, the Court should grant Defendant's motion and transfer this action to the Southern District of Ohio.

Dated: April 10, 2026                    Respectfully submitted,

By: */s/ Shawn Obi*

Shawn Obi (SBN: 288088)
SObi@winston.com
WINSTON & STRAWN LLP
333 S. Grand Ave., Suite 3800
Los Angeles, CA 90071
Telephone: +1 213-615-1700

*Attorney for Defendant*
*BOB EVANS FARMS, INC.*

9

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief does not exceed the Court's word-count and page-count limitations because it contains 2,826 words and spans 9 pages. *See* L.R. 11-6-1; ECF No. 12 ¶ 6(c).


Dated: April 10, 2026                    */s/ Shawn Obi*
                                         Shawn Obi

10

BOB EVANS FARMS, INC.'S REPLY IN SUPPORT OF MOTION TO TRANSFER