UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:25-cv-11993-MWC-DSR                              Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*


Present:  The Honorable Michelle Williams Court, United States District Judge


| T. Jackson | Not Reported |
|:---:|:---:|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|:---:|:---:|
| N/A | N/A |


**Proceedings: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND; DENYING DEFENDANT'S MOTION TO TRANSFER (DKTS. [31], [32])**

Before the Court are two motions.  The first is Defendant Bob Evans Farms, Inc.'s ("Defendant") motion to dismiss Plaintiff Michael Dotson's ("Plaintiff") First Amended Class Action Complaint ("FAC").  *See* Dkt. # 31 ("*MTD*").  Plaintiff opposed, *see* Dkt. # 35 ("*MTD Opp'n*"), and Defendant replied, *see* Dkt. # 36 ("*MTD Reply*").  The second motion is Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a).  *See* Dkt. # 32 ("*Mot. to Transfer*").  Plaintiff opposed, *see* Dkt. # 34 ("*Transfer Opp'n*"), and Defendant replied, *see* Dkt. # 37 ("*Transfer Reply*").  The Court finds these matters appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  After considering the papers, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss **WITH LEAVE TO AMEND** and **DENIES** Defendant's motion to transfer.

I.      Defendant's Motion to Dismiss

        A.      Background

The FAC centers on Defendant's labeling of Bob Evans Tasteful Sides: Macaroni & Cheese (the "Product") as having "no artificial preservatives."  *See generally* Dkt. # 22 ("*FAC*").  The FAC alleges as follows:

Defendant manufactures and sells products throughout California.  *See id.* ¶ 8. Defendant labeled the Product as containing "no artificial preservatives," despite the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-11993-MWC-DSR                           Date: April 21, 2026

Title:      Michael Dotson v. Post Holdings, Inc. *et al.*

products containing sodium phosphate and lactic acid. *See id.* ¶ 9. Sodium phosphate salts stem from "a variety of synthetic processes including, but not limited to, acid base reactions between phosphoric acid and sodium carbonate." *Id.* ¶ 10. To synthesize sodium phosphate, one must react tricalcium phosphate (purified phosphate rock) with sodium hydroxide. *Id.* ¶ 12. Sodium phosphate salts can slow the deterioration of food by preventing microbial growth and survival, lipid oxidation, and enzymatic browning. *Id.* ¶ 14. These benefits of sodium phosphate help extend the shelf life of consumer food products. *Id.* ¶¶ 14–15.

Defendant also uses lactic acid in the Product. *See id.* ¶ 17. To produce manufactured lactic acid, one must feed genetically engineered bacteria a carbohydrate feedstock (like glucose or sucrose), and those bacteria excrete lactic acid as part of their biological metabolic process. *Id.* ¶ 18. The next step is to collect and refine the lactic acid by removing dead bacteria cells through a "Rotary Drum Vacuum Filter." *Id.* The producer then purifies and extracts the lactic acid by adding a calcium salt like calcium carbonate to "cause a spontaneous synthetic acid-base reaction between the calcium carbonate and the lactic acid." *Id.* The result of that reaction is calcium lactate. *Id.* To convert calcium lactate to lactic acid, a producer adds sulfuric acid. *Id.* Lactic acid in its "undissociated form" is active against microorganisms, and the concentration of undissociated lactic acid in cheeses is negatively correlated with pH and positively correlated with total lactic acid content. *Id.* ¶ 19.

Plaintiff purchased the Product based on the labeling stating that the Product contained "no artificial preservatives." *Id.* ¶ 22. "Plaintiff, and reasonable consumers, understand the term 'artificial' based on common parlance," meaning "made, produced, or done by people." *Id.* ¶ 23. On September 8, 2025, Plaintiff purchased the Product from an Amazon Fresh store in Woodland Hills, California. *Id.* ¶ 25. "Plaintiff and the Class Members expected to receive the benefit of avoiding the negative potential effects of consuming artificial preservatives," but Defendant has deprived them of that benefit because the Product contains sodium phosphate. *Id.* ¶ 29. Plaintiff also would not have purchased the Product in lieu of other similar products without Defendant labeling the Product as having "no artificial preservatives." *Id.* ¶ 30. Plaintiff did not understand that the Product contained sodium phosphate and lactic acid when he purchased it. *Id.* ¶ 32. And Plaintiff could not have known that the Product's label was incorrect. *Id.* ¶ 33. Defendant's labeling the Product as having "no artificial preservatives" increased consumer demand for the Product. *Id.* ¶ 36. Defendant has profited through consumers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-11993-MWC-DSR                          Date: April 21, 2026

Title:    Michael Dotson v. Post Holdings, Inc. *et al.*

paying more for the Product based on Defendant's representation.  *See id.* ¶ 37.  Plaintiff is likely to visit stores in the future where Defendant sells products labeled as containing "no artificial preservatives," but Plaintiff will be unable to discern if this description accurately characterizes the products.  *Id.* ¶ 39.  "Plaintiff believes that products without artificial flavors or preservatives are superior in quality to products that contain artificial preservatives, and desires to purchase [p]roducts that do not contain artificial preservatives . . . ."  *Id.* ¶ 40.  Plaintiff has lost money and time, in addition to suffering stress and frustration, due to Defendant's labeling.  *See id.* ¶ 42.

Plaintiff brings three claims: (I) violation of California False Advertising Law ("FAL") under California Business & Professions Code § 17500; (II) violation of California Unfair Competition Law ("UCL") under California Business & Professions Code § 17200; and (III) violation of the California Consumer Legal Remedies Act ("CLRA") under California Civil Code § 1750.  *See generally id.*  The FAC proposes a nationwide class consisting of "[a]ll persons within the United States who purchased the Products within four years prior to the filing of the original Complaint through to the date of class certification."  *Id.* ¶ 43.  Plaintiff also proposes a California sub-class consisting of "[a]ll persons within California who purchased the Products within four years prior to the filing of the original complaint through to the date of class certification."  *Id.* ¶ 44.

Plaintiff originally filed this case in Los Angeles County Superior Court on November 12, 2025, and Defendant removed the case on December 18, 2025.  *See* Dkt. # 1.  On March 2, 2026, Defendant filed its motion to dismiss.  *See MTD*.

    B.    Legal Standard

Rule 8 requires a complaint to clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss."  *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008).  Pleadings that are "verbose, confusing and conclusory" are subject to dismissal.  *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981).  A plaintiff fails to comply with Rule 8 if "all defendants are lumped together in a single, broad allegation."  *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-11993-MWC-DSR                           Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, a cause of action's elements that are "supported by mere conclusory statements[] do not suffice." *Id*.  Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  To plead fraud with particularity, the pleader must state the false representations' time, place, and specific content.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  A pleader must "'identify the who, what, when, where, and how of the misconduct charged . . . .'" *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)).   The allegations "must set forth more than neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  In essence, the defendant must be able to adequately answer the fraud allegations.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

C.     Discussion

i.     *Misrepresentation*

a.     *Sodium Phosphate and Lactic Acid as "Artificial"*

Defendant first argues that the Court should dismiss the FAC because it fails to plausibly allege that lactic acid and sodium phosphate in the Product are "artificial." *See MTD* at 5–6.  Defendant avers that Plaintiff's allegations are only speculative, and that there are other ways that Defendant could have produced lactic acid and sodium phosphate that would not qualify as "artificial." *See id.*  The methods that the FAC describes here,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-11993-MWC-DSR                          Date: April 21, 2026

Title:      Michael Dotson v. Post Holdings, Inc. *et al.*

however, are sufficient at this stage.  The FAC refers to, *inter alia*, collecting and refining lactic acid by removing dead bacteria cells through a "Rotary Drum Vacuum Filter," adding calcium carbonate to create a synthetic reaction, and converting calcium lactate to lactic acid by using sulfuric acid.  *See FAC* ¶¶ 18–19.  The FAC also identifies that sodium phosphate stems from reacting tricalcium phosphate with sodium hydroxide.  *See id.* ¶¶ 14–15.

Defendant demands an unnecessary level of specificity at this stage.  By arguing that "the Complaint alleges only that the Product *might* contain 'artificial' lactic acid and sodium phosphate," *see MTD* at 6 (emphasis in original), Defendant asks Plaintiff to step into its lab before alleging that Defendant utilized an artificial preservative.  It is unclear how Defendant expects Plaintiff to decipher Defendant's exact method of producing lactic acid and sodium phosphate based on only publicly available information.  And Defendant does not contest that it uses these products, instead asking the Court to resolve factual disputes prematurely and to require a level of factual specificity Plaintiff could not yet attain.  Other courts in similar circumstances have declined such invitations, and the Court must do the same here.  *See, e.g.*, *Albrigo v. Chobani, LLC*, No. 3:24-cv-01418-BJC-KSC, 2025 WL 1930007, at *6 (S.D. Cal. July 11, 2025) (finding plaintiff's claims sufficient to survive a motion to dismiss based on allegations that products contain "stevia root extract and monk fruit extract" and that those ingredients undergo industrial processes rendering them artificial); *Trammell v. Albertsons Cos., Inc.*, No. 24-cv-00862-AJB-AHG, 2024 WL 5480483, at *9 (S.D. Cal. Nov. 25, 2024) (denying motion to dismiss by recounting allegations that defendant used DL-malic acid in products, detailing manufacturing process for DL-malic acid, and describing the methods and reasoning for using DL-malic acid in products); *see also Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1239 (C.D. 2025) (collecting cases in the context of citric acid).  Accordingly, the FAC sufficiently alleges that sodium phosphate and lactic acid are "artificial."

> b.      *Sodium Phosphate and Lactic Acid as "Preservatives"*

Defendant also asserts that the FAC fails to allege that lactic acid and sodium phosphate function as preservatives in the Product.  *See MTD* at 7–8.  The FAC explains that sodium phosphate and lactic acid slow the deterioration in consumer products and prevent bacterial growth.[1]  *See FAC* ¶¶ 15, 21.  Instead of acknowledging that the FAC

---

[1] The Food and Drug Administration describes chemical preservatives as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-11993-MWC-DSR                         Date: April 21, 2026

Title:    Michael Dotson v. Post Holdings, Inc. *et al.*

refers to the use of lactic acid and sodium phosphate as preservatives, Defendant raises several factual disputes.  *See MTD* at 7–8.  Defendant refers to the Product's "Keep Refrigerated" label and to research regarding these chemicals' other potential uses in food.  *See id.*  As several other courts have concluded, "[w]hether these substances function as artificial additives or preservatives is an inappropriate inquiry at this stage."  *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1147 (S.D. Cal. 2021) (collecting cases); *see Olmos v. T. Marzetti Co.*, No. LA CV21-03159 JAK (MRWx), 2022 WL 18358950, at *11 (C.D. Cal. Oct. 11, 2022) ("Whether citric acid in the Products actually functions as artificial flavor[ ], chemical preservative[ ], or both is a factual inquiry that is inappropriate to determine at this stage of the litigation." (internal quotation marks and citation omitted)); *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF, 2014 WL 6657809, at *6 (N.D. Cal. Nov. 21, 2014) ("Defendant's argument that tocopherol is not actually a chemical preservative presents a factual issue not appropriate for determination at the pleading stage.").  Thus, the FAC adequately alleges that sodium phosphate and lactic acid function as preservatives in the Product.

> c.      *Misleading a Reasonable Consumer*

The "reasonable consumer standard" governs the consumer protection statutes under which Plaintiff sues.  *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (citation omitted).  To prevail under this standard, a plaintiff must show that a defendant's representations are likely to deceive members of the public.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted).  "Generally, the issue of whether a business practice is deceptive is a fact question that cannot properly be resolved on a motion to dismiss."  *Madenlian v. Flax USA Inc.*, No. SACV 13-01748 JVS (JPRx), 2014 WL 7723578, at *2 (C.D. Cal. Mar. 31, 2014) (citation omitted); *see Ringler*, 783 F. Supp. 3d at 1240.

Defendant contends that the FAC fails to meet the standard for alleging actionable misrepresentation.  *See MTD* at 8–12.  Defendant's first tack is to contest Plaintiff's definition of "artificial," arguing that this "imprecision" is fatal to the FAC.  *See id.* at 9.  The FAC relies on the Merriam-Webster dictionary definition, describing "artificial" as meaning "made, produced, or done by people."  *See FAC* ¶ 23.  Defendant's motion to

---

sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."  *See* 21 C.F.R. § 101.22(a)(5).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:25-cv-11993-MWC-DSR                                 Date: April 21, 2026

Title:      Michael Dotson v. Post Holdings, Inc. *et al.*


dismiss attempts to introduce ambiguity where there is none.  As to the source of Plaintiff's definition, "[c]ourts often turn to dictionaries to determine the plain, unambiguous, and common meaning of terms."  *U.S. v. Wealth and Tax Advisory Servs., Inc.*, 526 F.3d 528, 530 (9th Cir. 2008) (citations omitted).  As to the FAC's application of that definition, there is no inconsistency in its use of the term "artificial," nor does the FAC's use of synonyms change the Court's conclusion.

Still, Defendant avers that no reasonable consumer would accept Plaintiff's definition of "artificial."  *See MTD* at 10–12.  Defendant criticizes the definition as too broad and avers that "Plaintiff does not plausibly allege that a reasonable consumer would share this understanding."  *See id.* at 10–11.  Much as Defendant may wish to argue with dictionaries, "we trust [dictionary definitions] to capture the common contemporary understandings of . . . word[s]."  *U.S. v. Flores*, 729 F.3d 910, 911 (9th Cir. 2013).  And the Merriam-Webster dictionary is not alone in its definition of "artificial."  *See, e.g.*, *Artificial*, OXFORD ENGLISH DICTIONARY ONLINE, https://www.oed.com/dictionary/artificial_adj?tab=meaning_and_use#38531029 (last visited April 20, 2026) (defining artificial as "opposed to natural" and "[o]f a thing: made or constructed by human skill, esp. in imitation of, or as a substitute for, something which is made or occurs naturally; man-made").

Defendant looks for safe harbor in *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), but that case provides none.  *See MTD* at 11–12.  There, the Ninth Circuit determined that the defendant's label representing that the product was "100% New Zealand Manuka Honey" was not misleading to the reasonable consumer.  *See Moore*, 4 F.4th at 881.  The panel explained that, despite ambiguity in the representation, "other available information about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief that Trader Joe's Manuka Honey was derived from 100% Manuka flower nectar."  *See id.* at 882.  The Ninth Circuit cited "three key contextual inferences from the product itself: (1) the impossibility of making a honey that is 100% derived from one floral source, (2) the low price of Trader Joe's Manuka Honey, and (3) the presence of the '10+' on the label . . . ."  *See id.* at 883.

Defendant here maintains that "[n]o reasonable consumer would read macaroni and cheese packaging and believe its ingredients could be completely free from human interference."  *See MTD* at 11.  But this argument focuses on only half of the phrase at issue, which refers to "no artificial *preservatives*."  *See generally FAC* (emphasis added). Plaintiff does not represent that he believed refrigerated macaroni and cheese could exist

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-11993-MWC-DSR                    Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*

without any human involvement.  But the FAC does recount that Plaintiff prefers products without artificial preservatives, *see FAC* ¶ 40, and Defendant fails to identify any indications like those in *Moore* to clarify the relevant phrase, *see generally MTD*.  Like other courts similarly situated, the Court cannot dismiss Plaintiff's claims under a misrepresentation theory.[2]  *See, e.g.*, *Williams*, 552 F.3d at 939 (noting that "the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false"); *Janney v. Mills*, 944 F. Supp. 3d 806, 817–18 (N.D. Cal. 2013) (similar); *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *6–9 (N.D. Cal. Dec. 10, 2013) (similar); *see also Williams*, 552 F.3d at 939 ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.").  As such, the FAC sufficiently alleges that the Product's label would mislead a reasonable consumer.

      *ii.*     *Statutory Standing*

      *a.*     *Products Not Purchased*

Defendant argues that Plaintiff lacks statutory standing to pursue his UCL, FAL, and CLRA claims based on products he never purchased.  *See MTD* at 14–15.  The FAC refers to Bob Evans Tasteful Sides: Macaroni and Cheese rather than differentiating between versions of that product.  *See generally FAC*.  But at this stage, Defendant's argument fails.  The FAC refers to only one food item that Defendant produces—macaroni and cheese—rather than extending its allegations to several kinds of products that purportedly include "no artificial preservatives."  *See generally id.*  "The prevailing view in the Ninth Circuit is that class action plaintiffs can bring claims for products they did not purchase as long as the products and alleged misrepresentations are substantially similar."  *Cordes v. Boulder Brands USA Inc.*, No. CV 18-6534 PSG (JCx), 2019 WL 1002513, at *2 (C.D. Cal. Jan. 30, 2019) (internal quotation marks and citation omitted).  "If there is a sufficient similarity between the products, any concerns regarding

---

[2] Because the Court allows Plaintiff's claim to proceed under a misrepresentation theory, it need not reach the question of Plaintiff's omission theory at this stage.  *See, e.g.*, *Doe v. Roblox*, 602 F. Supp. 3d 1243, 1262 (N.D. Cal. 2022).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:25-cv-11993-MWC-DSR                              Date: April 21, 2026

Title:    Michael Dotson v. Post Holdings, Inc. *et al.*


material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).

Defendant dedicates only a footnote to substantial similarity, *see MTD* at 15 n.10, and the FAC refers to all products bearing the title "Bob Evans Tasteful Sides: Macaroni and Cheese," *see FAC* ¶ 9.  To the extent that variations exist, slight variations in size or version do not render products so different as to preclude them from proceeding together at this juncture.  *See, e.g.*, *Figy v. Frito-Lay N. Am.*, 67 F. Supp. 3d 1075, 1084 (N.D. Cal. 2014); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012); *see also Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 WL 2147413, at *15 (N.D. Cal. May 15, 2013).  Nor does the Court agree that "the substantial similarity test is 'at odds with the statutory standing requirements' of the California consumer protection laws at issue."  *See MTD Reply* at 7 n.5 (quoting *Zakikhan v. Hyundai Motor Co.*, No. 8:20-cv-01584-SB (JDEx), 2021 WL 4805454, at *6 (C.D. Cal. June 28, 2021)).  As other courts have concluded, the substantial similarity inquiry fits comfortably within California's consumer protection statutes.  *See, e.g.*, *LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 886 (N.D. Cal. 2023).

Accordingly, Plaintiff has statutory standing to bring claims for all products constituting Bob Evans Tasteful Sides: Macaroni and Cheese.

> b.      *Injunctive Relief*

Defendant also claims that Plaintiff lacks statutory standing to pursue injunctive relief because he is now aware that the Product's label may be false.  *See MTD* at 15–16.  Ninth Circuit precedent forecloses this argument, stating:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm.  Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future.  In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-11993-MWC-DSR                                 Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*

> on the product's advertising or labeling in the future, and so
> will not purchase the product although she would like to.

*Davidson*, 889 F.3d at 969–70 (internal quotation marks and citations omitted).  The FAC alleges that "Plaintiff regularly visits stores where the Products are sold and will likely be exposed to Defendant's 'no artificial preservatives' labeling in the future.  However, unless Defendant is forced to correct the fraudulent labeling or remove the synthetic preservatives, Plaintiff will be unable to determine if Defendant's 'no artificial preservatives' label accurately reflects the true contents of the Products."  *FAC* ¶ 39.  These allegations are sufficient to show that Plaintiff may suffer harm again in the future through exposure to the Product.  Defendant relies almost exclusively on one case—*Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014)—in support of its position that Plaintiff cannot seek an injunction.  *See MTD* at 15–16; *MTD Reply* at 7–8.  The Court cannot rely on an unpublished district court case to contravene controlling Ninth Circuit precedent.

Defendant includes a footnote that they do not contest Article III standing.  *See MTD* at 15 n.11.  Still, Defendant offers no explanation as to how the requirements for Article III standing and statutory standing for injunctive relief differ in this context.  *See id*.  To be sure, *Davidson* focused only on Article III standing.  *See Davidson*, 889 F.3d at 967.  But Plaintiff's injuries—and potential injuries—fall within the plain language of the FAL, UCL, and CLRA.  *See In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *6 (N.D. Cal. Jan. 4, 2018) ("To establish statutory standing under the UCL or FAL, a plaintiff must demonstrate that she 'suffered injury in fact and . . . lost money or property as a result of the unfair competition.'" (quoting Cal. Bus. & Prof. Code §§ 17204, 17535)); Cal. Civ. Code §§ 1770, 1780.  Thus, Plaintiff has statutory standing to seek an injunction.

### iii.    Punitive Damages

Defendant next asserts that Plaintiff cannot obtain punitive damages under the FAC.  *See MTD* at 16.  Plaintiff does not contest that "[p]unitive damages are generally not available under the UCL or FAL."  *See Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 926 (E.D. Cal. 2020); *see generally MTD Opp'n*.  A plaintiff can recover punitive damages against a corporation under California law only if the plaintiff shows that an officer, director, or managing agent of the defendant authorized or ratified the conduct that constitutes malice, fraud, or oppression.  *See* Cal. Civ. Code § 3294(b); *Rozier v. Dep't of*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-11993-MWC-DSR                    Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*

*Homeland Sec. Fed. Protective Serv.*, No. 2:21-cv-07232-SB-AFM, 2022 WL 2199938, at *3 (C.D. Cal. Mar. 7, 2022); *Snyder v. Enter. Rent-A-Car Co. of S.F.*, 392 F. Supp. 2d 1116, 1130 n.22 (N.D. Cal. 2005).  Plaintiff does not contend that he has offered allegations against an officer, director, or managing agent of Defendant, only that he has alleged larger fraudulent conduct.  *See MTD Opp'n* at 21–22.  Without more, Plaintiff's claim for punitive damages cannot proceed at this juncture.  *See Ringler*, 783 F. Supp. 3d at 1248–49 ("And 'conclusory allegations of authorization or ratification fail to satisfy federal pleading standards' when the plaintiff has not 'alleged a single fact tending to show that any officer, director, or managing agent took any action amounting to authorization or ratification of the alleged misconduct . . . .'" (quoting *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *6 (N.D. Cal. May 31, 2011))).  For this reason, the Court **DISMISSES** Plaintiff's request for punitive damages.

                  *iv.     Nationwide Class*

        Lastly, Defendant asks the Court to dismiss Plaintiff's nationwide class allegations, *see MTD* at 17–20, and Plaintiff has agreed to dismiss those allegations, *see MTD Opp'n* at 25.  Accordingly, the Court **DISMISSES** Plaintiff's nationwide class allegations.[3]

        D.     Leave to Amend

        Whether to grant leave to amend rests in the sound discretion of the trial court.  *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  Courts consider whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile.  *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).  Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).  In the Ninth Circuit, courts should grant leave to amend with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation marks and citation omitted).  Here, it is not clear that

---

[3] Defendant asks the Court to dismiss Plaintiff's nationwide class allegations with prejudice. *See MTD Reply* at 8–9.  The premise of Defendant's argument is that Plaintiff is attempting to manipulate the Court's ruling on Defendant's motion to transfer. *See id.*  The Court cannot assign such a devious motive to Plaintiff's agreement, nor are the allegations so far afield as to make dismissal with prejudice appropriate.  Accordingly, though the Court dismisses Plaintiff's nationwide class allegations, it does so without prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**


Case No.  2:25-cv-11993-MWC-DSR                                   Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*


amendment would be futile, especially since this is the first time the Court has analyzed Plaintiff's claims.  For that reason, and considering the Ninth Circuit's guidance, the Court **GRANTS** leave to amend all claims.

II.     Defendant's Motion to Transfer

   A.     Background

   Plaintiff purchased the Product from an Amazon Fresh store located in Woodland Hills, California on September 8, 2025.  *See FAC* ¶ 25.  Defendant maintains its principal place of business in Ohio.  *See Mot. to Transfer* at 2.  "The majority of Defendant's executive and administrative functions related to product development, product packaging (including labeling), and product marketing" are in Defendant's New Albany, Ohio headquarters.  *See id.*  And most of the relevant documents are in Ohio.  *See id.*  Individuals responsible for decisions regarding labeling, marketing, and sales of the Product— including Jason Roche (Vice President of Marketing), Manuel Ortega (Vice President of Research & Development), Jenna Ramsey (Vice President of Finance), Jason Walter (Director of Dinner Sides), and Jessica Wiley (Director of IT: Business Relationship Management and Enterprise Reporting)—all work in Ohio.  *See id.*  Defendant seeks to transfer the case to the Southern District of Ohio.  *See generally id.*

   In response, Plaintiff highlights that he has agreed to voluntarily dismiss his nationwide claims, leaving only a class of California purchasers.  *See Transfer Opp'n* at 1– 2.  Plaintiff also notes that most of the discovery in the case is likely to be digital, and that depositions may occur remotely, limiting the inconvenience to the individuals Defendant identifies.  *See id.*

   B.     Legal Standard

   28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted).  The defendant bears the burden of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-11993-MWC-DSR                              Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*

showing that transfer is appropriate.  *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

In line with the statutory language, the Court engages in a two-step analysis to decide a motion to transfer under § 1404(a).  First, the Court determines whether the plaintiff could have brought the case in the transferee district.  *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960).  Venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

"If the case could have been brought 'in the would-be transferee court, then the court must make an individualized, case-by-case consideration of convenience and fairness.'" *Baxter Bailey and Assocs., Inc. v. Niagara Bottling, LLC*, No. 2:24-cv-02394-AB-BFM, 2025 WL 1543602, at *2 (C.D. Cal. May 5, 2025) (quoting *Roling v. E\*Trade Secs., LLC*, 756 F. Supp. 2d 1179, 1184 (N.D. Cal. 2010)).  The Ninth Circuit has offered examples of factors that a district court may consider when evaluating a motion to transfer, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-11993-MWC-DSR                          Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000); *see also Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) (listing similar factors, including the convenience of the parties and witnesses, the familiarity of each forum with the applicable law, the feasibility of consolidation with other claims, local interest in the controversy, and relative court congestion and time to trial). A plaintiff's choice of forum is generally afforded a great deal of deference, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981), though there is less deference to this choice "when the plaintiff elects to pursue a case outside its home forum," *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009).

C.      Discussion

   i.      *Ability to Bring Action in Southern District of Ohio*

As to the first step of the transfer analysis, Plaintiff does not dispute that he could have brought this action in the Southern District of Ohio. *See generally Transfer Opp'n.* And because Defendant resides in that judicial district, venue there would be proper. *See, e.g., United Constr. Prods., Inc. v. Tile Tech, Inc.*, No. 2:14-CV-08570-R-VBK, 2015 WL 7776795, at *1 (C.D. Cal. Dec. 1, 2015). Thus, the Court need only analyze the convenience and fairness factors.

   ii.     *Convenience and Fairness Factors*

       a.      *Convenience of the Parties and Witnesses*

Still, Defendant has not shown that transfer is warranted. Defendant first argues that the convenience of the parties and witnesses counsels in favor of transfer. It asserts that the "heart of the matter" took place in the Southern District of Ohio, and that the relevant witnesses all reside in that district. *See Mot. to Transfer* at 4–6. To be sure, the Court has little doubt that the Southern District of Ohio would be more convenient for Defendant and its employees, but the analysis does not end there. Plaintiff "will offer Defendant's employees the opportunity to appear by video for depositions . . . ." *See Transfer Opp'n* at 6. Since video depositions minimize travel expenses, this offer limits the inconvenience to Defendant's employee witnesses. *Cf. Guillen v. Bank of Am. Corp.*, No. 10-05825 EJD PSG, 2011 WL 3939690, at *1 (N.D. Cal. Aug. 31, 2011). Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-cv-11993-MWC-DSR                                      Date: April 21, 2026

Title:      Michael Dotson v. Post Holdings, Inc. *et al.*

responds that "a video deposition does not eliminate the need for live testimony at trial." *See Transfer Reply* at 3.  But "the convenience of a litigant's employee witnesses [is] entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum." *Lax v. Toyota Motor. Corp.*, 65 F. Supp. 3d 772, 779 (N.D. Cal. 2014) (internal quotation marks and citations omitted).

The Court also cannot ignore the resource disparity between the parties, nor should it. *See Nash v. Honeywell Int'l Inc.*, No. 2:24-cv-02952-DAD-AC, 2025 WL 3676942, at *5 (E.D. Cal. Dec. 17, 2025) ("Because defendant Honeywell is a multinational corporation with employees located in both states, defendant does not appear to suffer from financial constraints to the same extent as an individual plaintiff, and transfer therefore would merely shift any inconvenience from defendant to plaintiff, the court finds that these factors weigh against transfer."); *Bomanite Corp. v. Newlook Int'l, Inc.*, No. 1:07-CV-01640-OWW-SMS, 2008 WL 1767037, at *9 (E.D. Cal. Apr. 16, 2008) ("However, when a disparity exists between the means of the party, the court may consider such means in determining where the suit should proceed." (citation omitted)).  Plaintiff is an individual—and the lone plaintiff in the case—who would have to fly across the country on several occasions if the Court decided to transfer the case.  By contrast, the individuals Defendant identifies would likely travel once, and only if the case proceeds to trial.  Since "transfer is not permitted where it merely shifts inconvenience from one party to another," *United States v. Acad. Mortg. Corp.*, No. 16-cv-02120-EMC, 2018 WL 4053484, at *5 (N.D. Cal. Aug. 24, 2018) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)), this factor does not counsel in favor of transfer.

        *b.*  *Plaintiff's Choice of Forum*

Next, the Court considers Plaintiff's choice of forum.  Defendant argues that Plaintiff's choice of forum is entitled to little weight because Plaintiff seeks nationwide relief. *See Mot. to Transfer* at 6–7.  Although Plaintiff has agreed to dismiss his nationwide class allegations, Defendant attempts to stem the impact of that dismissal.  It argues that the FAC "still contains nationwide class allegations," *see Transfer Reply* at 5, but the Court's disposition above curbs this concern, *see supra* Section I.C.iv.  Defendant also asserts that "the Court should view [Plaintiff's] strategic maneuver with skepticism" and "disregard Plaintiff's post-motion actions." *See id.* at 5–6.  The Court will not accept Defendant's invitation to rule on its motion to transfer as if now-dismissed allegations remain.  It is not clear that Plaintiff gained any pre-motion advantage by having nationwide class allegations, so Defendant's allegations of gamesmanship are hollow.  But Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-11993-MWC-DSR                     Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*

further contends that the parties lack a significant connection to the forum, claiming that "Plaintiff's sole connection is a single purchase . . . ."  *See id.* at 6.  Plaintiff, however, is at home in this forum, rendering his connection far stronger than Defendant acknowledges.  *See, e.g.*, *Ruff v. Wilson Logistics, Inc.*, No. 3:22-cv-00988-WHO, 2022 WL 1500014, at *8 (N.D. Cal. May 12, 2022) (noting that the plaintiff had "a legitimate and significant connection to this forum and is entitled to deference for suing in his home state").  The Court cannot ignore that "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum," *Piper Aircraft*, 454 U.S. at 255, so this factor counsels against transfer.

### c.      Relevant Conduct

Defendant maintains that the "most important" contacts occurred in New Albany, Ohio.  *See Mot. to Transfer* at 7–8.  Defendant refers to the marketing decisions that led to it labeling the Product as it did.  *See id.*  To be sure, these contacts are significant.  But so is the place where the Plaintiff encountered the allegedly mislabeled product and suffered injury—the Central District of California.  *See Wilson v. Conair Corp.*, No. 1:14-894 WBS BAM, 2014 WL 4249514, at *2 (E.D. Cal. Aug. 27, 2014) ("Courts routinely find venue proper in UCL and CLRA cases where the plaintiff encountered false advertising and purchased the product in question in the forum district." (collecting cases)); *see also Sapan v. Dynamic Network Factory, Inc.*, No. 13-cv-1966-MMA (WVG), 2013 WL 12094829, at *3 (S.D. Cal. Nov. 25, 2013) (noting that "courts have found that venue is proper where the alleged injury occurred," rather than where a phone call—the conduct causing harm in a Telephone Consumer Protection Act case—originated).  Defendant offers no limiting principle for its argument—by Defendant's logic, plaintiffs should litigate every case stemming from one of Defendant's decisions in the Southern District of Ohio.  The Court cannot accept this absurd result.  Accordingly, this factor does not weigh strongly in favor of transfer.

### d.      Location of Evidence

Defendant also refers to the location of evidence as supporting transfer.  *See Mot. to Transfer* at 8–9.  Since Defendant's headquarters are in the Southern District of Ohio, there will be a great deal of evidence in that district.  But "in the current age of electronic discovery, the location of documentary evidence is increasingly irrelevant."  *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, No. 19-CV-02520-LHK, 2019 WL 6735604, at *16 (N.D. Cal. Dec. 11, 2019) (citation omitted); *Lax*, 65 F. Supp. 3d at 780 ("[W]here electronic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-11993-MWC-DSR                              Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*

discovery is the norm (both for electronic information and digitized paper documents), ease of access is neutral given the portability of the information."); *Clarke v. Kraft Heinz Co.*, No. 21-cv-02437-RS, 2021 WL 4079176, at *2 (N.D. Cal. Sept. 8, 2021) ("The inconvenience of transferring relevant evidence is similarly not dispositive where, in the digital age, 'ease of access is neutral given the portability of [electronic discovery].'" (quoting *Alul v. Am. Honda Motor Co., Inc.*, No.16-cv-04384-JST, 2016 WL 7116934, at *2 (N.D. Cal. Dec. 7, 2016))).  Thus, this factor does not weigh in favor of transfer.

> e.      *State Interest in the Dispute*

Defendant asserts that Ohio has a greater interest in the controversy than California. *See Mot. to Transfer* at 9.  It attempts to frame the controversy as "Ohio-centric" because "the challenged labeling decisions were made there, the responsible employees work there, and Defendant is headquartered there . . . ."  *See Transfer Reply* at 7.  But "California has a strong interest in redressing misconduct that targets its citizens, in particular for false advertising where California courts have held that it is a paramount concern to protect its citizens from deception."  *Incorp. Servs. Inc. v. Incsmart.Biz Inc.*, No. 11-CV-4660-EJD-PSG, 2012 WL 3685994, at *11 (N.D. Cal. Aug. 24, 2012) (citing *Ind. Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 749 (C.D. Cal. 1995)).  Even if the Court accepts that Ohio also has an interest in the case based on its desire to regulate its corporations, that interest is not so weighty as to require transfer.  *See Ringler v. J.M. Smucker Co.*, No. 2:25-cv-01138-AH-(Ex), 2025 WL 3150679, at *5 (C.D. Cal. Oct. 30, 2025) (finding that the state interest factor only slightly favored transfer in a dispute where there were also Ohio class members).  Accordingly, this factor does not counsel in favor of transfer.

> f.      *Familiarity with Governing Law*

Defendant argues that because federal courts routinely apply other states' laws, this factor does not counsel against transfer.  *See Mot. to Transfer* at 10.  There is no question that federal courts interpret other states' laws frequently.  *See Yearby v. Am. Nat. Ins. Co.*, No. 20-cv-09222-EMC, 2021 WL 3855833, at *7 (N.D. Cal. Aug. 30, 2021) (noting that "'federal judges routinely interpret other states' laws during their tenure on the bench'" (quoting *Hunt v. Ameritas Life Ins. Corps.*, No. 4:19-CV-01657-JSW, 2019 WL 7666755, at *4 (N.D. Cal. Sept. 25, 2019))).  But because the Central District of California is more familiar with the state law claims at issue in this case, this factor still counsels slightly against transfer.  *See, e.g.*, *Gargus v. Upload, LLC*, No. 2:25-cv-08337-MWC-AGR, 2026

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-11993-MWC-DSR                    Date: April 21, 2026

Title:     Michael Dotson v. Post Holdings, Inc. *et al.*

WL 121205, at *4 (C.D. Cal. Jan. 13, 2026); *see also SP Inv. Fund I, LLC v. Lowry*, No. CV 15-6029 DMG (AGRx), 2016 WL 590192, at *6 (C.D. Cal. Feb. 11, 2016).

> *iii.*     *Determination*

"The burden of showing that transfer is appropriate is on the moving party." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006). Because Defendant has failed to carry its burden here, the Court **DENIES** Defendant's motion to transfer venue.

III.     Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss **WITH LEAVE TO AMEND** and **DENIES** Defendant's motion to transfer.  If Plaintiff wishes to file an amended complaint, he must do so by end of day on May 15, 2026.  The April 24, 2026, hearing is **VACATED**.

**IT IS SO ORDERED.**

                                                                                                          :
**Initials of Preparer**   TJ